IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CV-00253-BO

| | | |
|---|---|---|
| CHRISTOPHER MOSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

This cause is before the court on plaintiff's pending motions [D.E. 25, 26, 31, 43, 46, 56], and defendant's pending motion to dismiss [D.E. 33]. For the reasons discussed below, the court denies plaintiff's various motions and grants defendant's motion to dismiss.

Procedural History:

Christopher Mosby ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, contests a U.S. Drug Enforcement Agency ("DEA") forfeiture of United States Currency.[1] [D.E. 1, 7, 18]. This case stems from a related case where the court: noted forfeiture proceedings were initiated against plaintiff on August 29, 2012; directed the clerk to open this action as a motion to set aside a forfeiture under 18 U.S.C. § 983(e) with plaintiff's motions for the return of property serving as the complaint; and assigned an effective filing date of April 20, 2017. See Mosby v. Hunt, et al., No. 5:16-HC-02136-BO (E.D.N.C. June 5, 2018), Order [D.E. 18]. On February 22, 2019, the court granted plaintiff's motion to amend, conducted its initial review of the amended complaint,

---

[1] Plaintiff raised prior claims regarding this seizure and forfeiture. See Mosby v. Sykes, No. 5:15-CT-3202-BO, 2017 WL 4102487, at *2–3 (E.D.N.C. Feb. 23, 2017) (noting DEA seized money under 21 U.S.C. § 881 and finding the complaint under 28 U.S.C. § 1983 failed to state a claim), aff'd 692 Fed.Appx. 755 (4th Cir. 2017); Mosby v. Ingram, No. 5:15-ct-03247-BO (E.D.N.C. Mar. 28, 2016) (denying a Writ of Mandamus to compel return of the forfeited money).

liberally construed plaintiff's filings as an action to set aside the forfeiture under 18 U.S.C. § 983(e), and allowed the action to proceed. Order [D.E. 24].

On February 28, 2019, plaintiff filed a motion to consolidate cases, see Mot. [D.E. 25],[2] and a motion for summary judgment together with attached documents in support, see Mot. [D.E. 26].

On April 30, 2019, plaintiff filed another motion for summary judgement with attached documents in support. See Mot. [D.E. 31].

On May 7, 2019, defendant filed a motion to dismiss under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6), Mot. [D.E. 33], a memorandum in support [D.E. 34], a statement of material facts [D.E. 35], and a declaration with attachments [D.E. 36]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 37].

On May 30, 2019, plaintiff filed a response in opposition to defendant's motion to dismiss [D.E. 38]. On June 25, 2019, defendant filed a reply [D.E. 41].[3]

On August 14, 2019, plaintiff filed a motion seeking entry of default. Mot. [D.E. 43].

On November 21, 2019, plaintiff filed a motion for summary judgment, Mot. [D.E. 46], a declaration [D.E. 47], and a statement of material facts [D.E. 48]. On November 26, 2019, defendant filed a response in opposition [D.E. 49]. On December 13, 2019, plaintiff filed a reply [D.E. 50].

On October 7, 2020, plaintiff filed a motion for judgment on the pleadings [D.E. 56].[4]

---

[2] Because the case which plaintiff sought to consolidate with this action was dismissed, see Order [D.E. 9], Mosby v. State of North Carolina, No. 5:19-hc-02006-D (E.D.N.C. Sept. 19, 2019), this motion to consolidate is moot.

[3] Plaintiff's sur-reply, [D.E. 42], exceeds the scope of filings allowed under E.D.N.C. Local Civil Rule 7.1 because it was not filed in response to an order of the court. Accordingly, the court declines to consider this filing.

[4] Plaintiff also filed documents entitled "LEGAL NOTICE! NAME DECLARATION CORRECTION PROCLAMATION AND PUBLICATION [sic]," [D.E. 51], and "Writ of Quo Warranto for Dismissal [sic]," [D.E. 53]. These filings lack merit.

2

Background:

According to a DEA investigation report, on August 7, 2012, a confidential source informed law enforcement that plaintiff would shortly be traveling from Leland, North Carolina, to New Jersey in a 2012 Toyota rental vehicle with Virginia license plates in possession of several thousand dollars of bulk U.S. currency in order to purchase a large amount of heroin.[5] See Pl.'s Attach. [D.E. 31-3] at 12, ¶¶1–2. After setting up surveillance, id. at 12, ¶3, at approximately 2:20 a.m. on August 8, 2012, Brunswick County Sheriff's Department K-9 Deputy Carlisle initiated a traffic stop on the 2012 Toyota rental vehicle with Virginia plates in which plaintiff was a passenger, id. at 15, ¶22. The narcotics detection K-9 alerted to the trunk of the vehicle. Id. at 16, ¶¶26–27.

During an ensuing search of the trunk, officers found a black duffle bag containing four bundles of U.S. Currency wrapped in rubber bands, totaling $18,000, and an additional $507 on plaintiff's person. Id. Plaintiff was detained in handcuffs. Id. at ¶27. According to Deputy Carlisle, plaintiff "immediately claimed ownership to the currency." Id. at ¶28. Plaintiff stated: his mother brought the money from Pennsylvania to purchase a residence in Winnabow, North Carolina; she decided not to make the purchase and instead returned to work; she left the currency with plaintiff in a paper bag; and, when the currency became wet, plaintiff wrapped it in rubber bands. Id.

TFO Lanier arrived at the scene with other officers, was informed about the vehicle stop, and "secured all the U.S. Currency . . . in a self sealing evidence bag . . . as witnessed by TFO Chris Bradley." Id. at ¶29. TFO Lanier then separated plaintiff from Sidney Franklin, the driver of the vehicle, and advised plaintiff of his Miranda rights. Id. at 16–17, ¶30. TFO Lanier noted plaintiff's statements that: the currency belonged to his mother, Gwynn Pearshall; plaintiff's mother "came

---

[5] The law enforcement officer who received this information, Stephen Lanier ("Lanier"), was both a Brunswick County Deputy Sheriff and DEA task force officer ("TFO") with the Wilmington DEA Residence Office ("WRO"). Pl.'s Attach., Lanier Aff. [D.E. 31-3] at 8–9, ¶¶1–2.

3

down from Allentown, Pennsylvania, and withdrew $18,000.00 from a bank the week prior" to the traffic stop; plaintiff's mother did not purchase the residence but instead "returned home to work" and left the currency with plaintiff; that plaintiff was not currently employed and currency found on his person "came from the Lottery." Id. When TFO Lanier asked plaintiff why his mother did not deposit her money back in the bank, plaintiff stated, "She banks at the Credit Union and they don't take deposits." Id. Plaintiff "denied any and all affiliation with illegal drugs and could not give an explanation as to the reason Deputy Carlisle's narcotics K-9 indicated on the trunk of the vehicle where the money was located." Id. Plaintiff provided a telephone number and a New Jersey address for his mother and indicated that his full-time residence was in New Jersey. Id. TFO Lanier then transported the currency and the self sealing evidence bag to the WRO and placed these items in a High Value Seized and Recovered Monies safe "as witnessed by TFO Nick Giacobbe."[6] Id. at ¶33.

Although plaintiff was not charged with a crime on August 8, 2012, the investigation continued. Pl.'s Attach., Lanier Aff. [D.E. 31-3] at 9, ¶3. During a traffic stop on August 16, 2012, heroin was found in a duffle bag, plaintiff admitted the heroin was his, and he was arrested. Id.

On August 29, 2012, the DEA transferred the seized currency to the United States Marshals Service and civil forfeiture proceedings were initiated. Id. at ¶4.

On June 18, 2015, plaintiff entered a no-contest plea in Brunswick County Superior Court to possession with intent to manufacture, sell, or deliver heroin pursuant to the August 16, 2012, traffic stop, and he was sentenced to a 19-month term of incarceration.[7] Pl.'s Attach., Lanier Aff.

---

[6] TFO Lanier avers: "The seizure was part of a DEA investigation and involved Brunswick County sheriff's deputies assisting DEA task force officers." Pl.'s Attach., Lanier Aff. [D.E. 31-3] at 8, ¶2.

[7] Plaintiff declares his guilty plea for trafficking heroin was vacated on appeal but acknowledges his present incarceration on unrelated charges. Pl.'s Decl. [D.E. 31-2] at ¶¶2, 9; see N.C. Dep't of Pub. Safety, Offender Pub. Info. https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0468975&searchOffenderId=04689 75&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (visited Oct. 9, 2020).

4

[D.E. 31-3] at 9, ¶3. The judgment and commitment form includes a Superior Court order directing: "any funds held by [the] state which were seized in connection with this case in the possession or control of the sheriff shall be returned to the def[endant]." Compl. Attach. [D.E. 1] at 5.

## Discussion:

1) Plaintiff's first and second motions for summary judgment [D.E. 26, 31]:

Plaintiff filed his first motion summary judgment on February 29, 2019, Mot. [D.E. 26], and his second motion for summary judgment on April 30, 2019, Mot. [D.E. 31]. The United States, however, was served with the complaint on March 8, 2019, with an answer or a motion to dismiss pursuant to Fed. R. Civ. P. 12 due within 60-days of receipt of service. See [D.E. 29]. On May 7, 2019, the United States timely filed a motion to dismiss. See Mot. [D.E. 33].

Here, because plaintiff filed these motions for summary judgment before defendant's answer was due, the court DENIES these motions as premature. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986) (noting summary judgment must be refused "where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.").

2) Defendant's motion to dismiss [D.E. 33]:

a) Legal Standard:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction–a court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Id. at 104; see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) ("The plaintiff has the burden of proving that subject matter jurisdiction exists."). When considering a motion to dismiss for lack of subject-matter jurisdiction, "[t]he district court should apply the standard applicable to a motion for summary judgment, under

5

which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted). The court also may consider evidence outside the pleadings without converting the motion into one for summary judgment. See id. (citation omitted).

A motion to dismiss under Rule 12(b)(6) tests whether the complaint is legally and factually sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). "To survive a motion to dismiss, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level'—that is, the complaint must contain 'enough facts to state a claim for relief that is plausible on its face.'" King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).

When considering a motion to dismiss, the court need neither accept a complaint's legal conclusions drawn from the facts, see Iqbal, 556 U.S. at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted). The court, however, construes factual allegations in the complaint in the light most favorable to the non-moving party. Albright v. Oliver, 510 U.S. 266, 268 (1994); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Although the court liberally construes *pro se* filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), all complaints still must contain "more than labels and conclusions," Twombly, 550 U.S. at 555.

b) Arguments:

Plaintiff argues: 1) the United States lacks jurisdiction over the currency; 2) the currency was seized without probable cause; 3) forfeiture of the currency was not justified under 21 U.S.C. § 881; 4) plaintiff was denied due process as to forfeiture of the currency; and that 5) although the currency

6

was ordered returned by a state-court ruling, these funds have not been returned.[8] See [D.E. 1]; Pl.'s Decl. [D.E. 26-2]; Pl.'s Decl. [D.E. 31-2].

Defendant argues that the only issue properly before the court is the adequacy of the notice of forfeiture because, although 18 U.S.C. § 983(e) provides the "exclusive remedy" to set aside an administrative forfeiture, the court lacks jurisdiction to review the merits of the forfeiture. See Def.'s Mem. [D.E. 34] at 4. Defendant also argues plaintiff's challenge to the notice of forfeiture fails because 1) the Government took reasonable steps to provide plaintiff direct notice, and 2) plaintiff had knowledge of the seizure within the meaning of 18 U.S.C. § 983(e)(1)(B). Id. at 5–8.

In a declaration supporting the motion to dismiss, DEA Acting Forfeiture Counsel Merri Hankins ("Hankins") sets forth the notice provided during the administrative forfeiture proceeding for the currency. See Def.'s Exhibit A, Hankins Decl. [D.E. 36]. Hankins declares that plaintiff, Sidney Franklin (the rental vehicle driver), EAN Holding, LLC (the rental vehicle's registered owner), and Gwynn Pearsall (plaintiff's mother) all were sent direct notice. Id. at ¶4. Hankins further declares that DEA attempted to serve plaintiff at two different New Jersey addresses; one attempt was returned as undeliverable, but the other was signed for by an individual accepting delivery on plaintiff's behalf. Id. at ¶¶4(b)-(c); see [D.E. 36-3] (photocopy of certified mail delivery of the notice of forfeiture accepted and signed for on plaintiff's behalf). DEA also published notice in the *Wall Street Journal* for three consecutive weeks beginning September 24, 2012. See Def.'s Exhibit A, Hankins Decl. [D.E. 36] at ¶4(h). After no claims were received as to the seized currency, an administrative declaration of forfeiture was entered on January 7, 2013. Id. at ¶4(n).

---

[8] In his self-styled "statement of undisputed facts [sic]," plaintiff asserts: defendant admits to not giving plaintiff a receipt or notice of forfeiture; Lanier "admits to fraud of impersonating a D.E.A. agent at the time he confiscated plaintiff's U.S. currency [sic]"; defendant admits "there was no justification to confiscate and forfeiture as provide under 21 U.S.C. § 881 [sic]"; and documents prove "lack of jurisdiction" over the property. See Pl.'s Stmt. [D.E. 31-1] at 1–2. Plaintiff also declares that he did not receive notice of forfeiture or "access to the court" allowing him to challenge the forfeiture and that there was no probable cause to initiate the seizure or forfeiture. Pl.'s Decl. [D.E. 31-2] at ¶1.

7

In his response in opposition, plaintiff argues: service on plaintiff at "the last corresponding address [sic]" was insufficient because defendant knew or should have known that plaintiff was incarcerated in the North Carolina since August 27, 2012; pursuant to Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("Dusenbery") (finding procedural due process requires that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard'"), defendant should have sent plaintiff written notice in prison; and publication in the *Wall Street Journal* does not accord with the local rules of practice and procedure. See Pl.'s Resp. [D.E. 38].

In reply, defendant notes that the relevant test "is whether notice was 'reasonably calculated under all the circumstances to appraise [plaintiff] of the pendency of the [administrative] forfeiture.'" Def.'s Reply [D.E. 41] at 2 (quoting Dusenbery, 534 U.S. at 168).

c) Discussion:

Under 21 U.S.C. § 881, the Government may seek forfeiture of money or other property connected to a violation of drug laws. Under the Civil Asset Forfeiture Reform Act ("CAFRA"), "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture," 18 U.S.C. § 983(c)(1), and the Government must give claimants notice of forfeiture within 90 days of the seizure, 18 U.S.C. § 983(a)(1)(A)(iv) (stating notice requirement when state or local law enforcement seizes property and turns it over to federal law enforcement for forfeiture under federal law). However, once an administrative forfeiture is entered, as here, the court lacks jurisdiction to consider the merits of the forfeiture. See, e.g., Ibarra v. United States, 120 F.3d 472, 476 (4th Cir. 1997) (finding administrative forfeiture proceeding divests the court of jurisdiction); United States v. Schinnell, 80 F.3d 1064, 1069 (5th Cir. 1996) ("Once the administrative forfeiture was completed, the district court lacked jurisdiction to review the forfeiture except for failure to comply with procedural requirements or to comport with due process.").

8

Accordingly, the sole issue before the court is whether plaintiff received adequate notice of the forfeiture. See 18 U.S.C. § 983(e)(1), (5); Mesa Valderrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005) ("18 U.S.C. § 983(e) is the exclusive remedy available to persons challenging nonjudicial forfeiture actions providing relief only in instances where the injured party did not receive adequate notice to challenge the proceeding"); McKinney v. U.S. Dep't of Justice Drug Enf't Admin., 580 F. Supp. 2d 1, 3–4 (D.D.C. 2008) (quoting 18 U.S.C. § 983(e)(5) for the proposition that the CAFRA "restricts the sovereign's consent to suit by providing that '[a] motion filed under this subsection shall be the *exclusive remedy* for seeking to set aside a declaration of forfeiture under a civil forfeiture statute,'" and finding that, "once an administrative declaration of forfeiture has been issued under the CAFRA, the United States has unequivocally expressed its consent to be sued only under 18 U.S.C. § 983(e)(1).").

Section 983(e)(1) provides:

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if--

(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e)(1).

Where the civil forfeiture does not exceed $500,000, as is the case here, the Government must provide written notice to "each party who appears to have an interest in the seized article" and publish notice of the seizure and intention to forfeit the property seized "for at least three successive weeks in such a manner as the Secretary of the Treasury may direct." 19 U.S.C. § 1607(a). When

9

the instant forfeiture was initiated, this notice required publication "once a week for at least 3 successive weeks in a newspaper of general circulation in the judicial district in which the processing for forfeiture is brought." 21 C.F.R. § 1316.75(a) (2012).

Here, the record reflects that notice of forfeiture was published in the *Wall Street Journal* for three consecutive weeks. See Def.'s Exhibit 13 [D.E. 36-14]. Despite plaintiff's bald assertion that this newspaper publication does not accord with the local rules of practice and procedure, see Pl.'s Resp. [D.E. 38], the court finds the *Wall Street Journal* is a newspaper in general circulation in the Eastern District of North Carolina within the meaning of 21 C.F.R. § 1316.75(a) (2012).

As to the written notice requirement, the record reflects, and plaintiff does not dispute, that the Government sent written notice to plaintiff's New Jersey address, and that this notice was signed for on plaintiff's behalf by another individual. See Def.'s Exhibit 2 [D.E. 36-3] (photocopy of certified mail delivery of the notice of forfeiture to plaintiff Christopher Mosby's address in Springfield, New Jersey, with the following signature: "Joyce Lynn for Christopher Mosby").

Despite plaintiff's claim that notice of forfeiture was insufficient under Dusenbery because the Government knew or should have known plaintiff would not receive the written notice sent to his New Jersey address when he was incarcerated in North Carolina, actual receipt of forfeiture notice is not required under the CAFRA. See Jones v. Flowers, 547 U.S. 220, 226 (2006) ("Due process does not require that a property owner receive actual notice before the government may take his property. Rather, we have stated that due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (citations omitted)); see also Centeno v. United States, 2006 WL 2382529, at *3 (S.D.N.Y. Aug. 17, 2006) (noting Dusenbery rejected any requirement that the Government must prove actual receipt of forfeiture notice).

10

Here, although the Government failed to mail notice of the forfeiture to plaintiff's place of incarceration, the court finds that the Government nevertheless took "reasonable steps" to provide plaintiff notice of the forfeiture. 18 U.S.C. § 983(e)(1)(A); see Jones, 547 U.S. at 226; Dusenbery, 534 U.S. at 170 (noting the Government is not required to make "heroic efforts" at notice); see also Weigner v. City of New York, 852 F.2d 646, 651 (2d Cir. 1988) ("Particularly where mailing is supplemented by other forms of notice such as posting or publication, the risk of non-receipt is constitutionally acceptable."); Harrington v. U.S. Drug Enf't Agency, No. CIV.A. 05-CV-206-WOB, 2006 WL 897221, at *3–5 (E.D. Ky. Apr. 6, 2006) (noting "[w]ritten notice of forfeiture by certified mail to the claimant's residence generally satisfies due process even if the claimant does not receive actual notice," and finding that, where notice of forfeiture was accepted by another individual at plaintiff's then-known address, this satisfied due process); cf. United States v. Hooker, 93 F. App'x 567, 568 (4th Cir. 2004) (per curiam) (unpublished) (finding the Government failed to submit evidence showing adequate notice of forfeiture).

Alternatively, even if the written notice of forfeiture was insufficient under Dusenbery, because plaintiff was present when the currency was seized, plaintiff nevertheless fails to establish that he did not know or have reason to know of the seizure within sufficient time to file a claim, as required under 18 U.S.C. § 983(e)(1)(B). See, e.g., United States v. Russell, No. 2:04CR150-MHT, 2006 WL 2786883, at *3 (M.D. Ala. Sept. 27, 2006) (finding movant failed to establish "he did not know or have reason to know of the seizure within sufficeint time to file a timely claim" when the money was seized from him); Harrington, 2006 WL 897221, *4 (E.D.Ky. Apr. 6, 2006) (finding § 983(e)(1) unsatisfied where movant knew money was seized from his pocket); Johnson v. United States, No. 1:03-CV-00281-LJM VS, 2004 WL 2538649, at *4 (S.D. Ind. Oct. 22, 2004) (finding § 983(e)(1) unsatisfied where movant was present at seizure and had months to claim an interest).

11

Thus, after considering the factual allegations in the light most favorable to plaintiff, the court finds that, because plaintiff fails to satisfy both requirements of 18 U.S.C. § 983(e)(1), plaintiff likewise fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Accordingly, the court GRANTS defendant's motion to dismiss [D.E. 33].

3) Plaintiff's motion for entry of default [D.E. 43]:

An entry of default shall be made when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." See Fed. R. Civ. P. 55(a).

Plaintiff argues that default should be entered because defendants failed "to respond to second response to summary judgment pleading which is require of 20 to 30 days, which it has been 40 days and counting, as well as over exceeded 'the mail box rule' [sic]." Mot. [D.E. 43] at 1.

Here, defendant filed a pre-answer motion to dismiss. See Mot. [D.E. 33]. To the extent plaintiff asserts that defendant's failure to respond to his sur-reply constitutes grounds for entry of default, plaintiff is incorrect. As noted above in footnote 3, sur-replies and responses to sur-replies are not permitted absent a court order directing such filings. See E.D.N.C. Local Civil Rule 7.1. To the extent plaintiff instead asserts that defendant failed to respond to plaintiff's first and second motions for summary judgment, no response was necessary because, as noted above, these motions were premature. Accordingly, the court DENIES the motion for entry of default [D.E. 43].

4) Plaintiff's third motion for summary judgment [D.E. 46]:

Summary judgment is appropriate when, after reviewing the entire record, the court finds that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48.

For the above reasons granting defendant's motion to dismiss, plaintiff fails to demonstrate that he is entitled to judgment as a matter of law, and the court DENIES this motion [D.E. 46].

12

5) Plaintiff's motion for judgment on the pleadings [D.E. 56]:

In reviewing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court applies "the same standard" as for motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). See Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002).

For the above reasons granting defendant's motion to dismiss, this motion also is DENIED.

### Conclusion:

For the reasons discussed above, the court: DENIES AS MOOT the motion to consolidate [D.E. 25]; DENIES plaintiff's motion for entry of default [D.E. 43]; DENIES plaintiff's motions for summary judgment [D.E. 26, 31, 46]; DENIES plaintiff's motion for judgment on the pleadings [D.E. 56]; and GRANTS defendant's motion to dismiss [D.E. 33]. The clerk shall close the case.

SO ORDERED. This _7_ day of _November_ 2020.

TERRENCE W. BOYLE
Chief United States District Judge